IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIO DINERO SESSOMS,

      Petitioner,             No. CIV S 05-1221 DFL GGH P

    vs.

D. L. RUNNELS, Warden, et al.,

      Respondents.           ORDER

/

      Petitioner, proceeding with counsel, has filed a petition pursuant to 28 U.S.C. §2254. Petitioner's motion for an evidentiary hearing came on for hearing before the undersigned on September 28, 2006. Eric Weaver appeared for petitioner. Respondent's counsel made no appearance.[1]

      Petitioner was convicted in Sacramento County Superior Court, after a jury trial, of one count of murder (Cal. Penal Code § 187(a)); one count of robbery (Cal. Penal Code § 211); and of burglary (Cal. Penal Code §§ 459 and 462(a)). Two special circumstances were found true as to the murder count, count one: 1) that petitioner was engaged in the commission or attempted commission of the crime of robbery, in violation of Cal. Penal Code § 211 (Cal. Penal

---

[1] Deputy Attorney General Jeffrey Firestone's apologies for his oversight were later conveyed through the courtroom deputy.

Code § 190.2(a) (17)); and (2) petitioner was engaged in the commission or attempted commission of the crime of burglary, in violation of Cal. Penal Code § 459 (Cal. Penal Code § 190.2(a) (17)).  Amended Petition (AP), pp. 1-2.  Petitioner was sentenced to an aggregate term of life without the possibility of parole and additional determinate terms in the amount of 15 years.  AP, p. 2.

Petitioner has raised the following claims in his amended petition: 1) petitioner received ineffective assistance of counsel (IAC) when his trial counsel did not contact and interview the officers who took petitioner into custody in Oklahoma, failing to learn that petitioner had invoked his Miranda rights to the Oklahoma officers prior to being interviewed by the California police officers; 2) the state court of appeal unreasonably concluded that petitioner's request for counsel to the California police officers, Woods and Keller, was equivocal.  AP (Memorandum), pp. 10, 28.

Petitioner has moved for an evidentiary hearing as to claim one of the amended petition.  Generally:

> To obtain an evidentiary hearing on an ineffective assistance of counsel claim, a habeas petitioner must establish that (1) his allegations, if proven, would constitute a colorable claim, thereby entitling him to relief and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts.

Correll v Stewart, 137 F.3d 1404, 1413 (9th Cir. 1998).  If, of course, petitioner's facts cannot stand as the basis for a federal claim, e.g., the alleged error is not prejudicial as a matter of law, no evidentiary hearing is required.

Since the passage of AEDPA, a petitioner who has "failed to develop" a claim, i.e., had an opportunity to develop a claim, but did not do so, is not entitled to an evidentiary hearing unless that petitioner demonstrates diligence to discover the factual predicate for his claim despite his "failure," and that he is actually innocent of the crime for which he was convicted. 28 U.S.C. § 2254(e)(2); Williams (Michael) v. Taylor, __U.S.__, 120 S. Ct. 1479 (2000).  "A petitioner has not neglected his or her rights in state court if diligent in efforts to

2

1  search for evidence." Williams, 120 S. Ct. at 1490. "Diligence ... depends upon whether the
2  prisoner made a reasonable attempt, in light of the information available at the time, to
3  investigate and pursue claims in state court." Id. "Diligence require[s] in the usual case that the
4  prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by
5  state law." Id.; Bragg v. Galaza, 242 F.3d 1082, 1090 (9th Cir. 2001), as amended 252 F.3d 1150
6  (9th Cir. 2001).

       Moreover, federal habeas law affords a presumption of correctness to facts found after a full and fair hearing. 28 U.S.C. § 2254(e)(1). A petitioner may overcome the presumption with clear and convincing evidence, id., but it only makes sense to read the previous general law on the granting of an evidentiary hearing in harmony with the presumption – unless the petitioner alleges facts that would clearly warrant an overcoming of the presumption, there is no need to hold an evidentiary hearing.

       In arguing for an evidentiary hearing on claim one, petitioner asserts that most of the facts supporting this IAC claim are outside the trial record (motion, p. 3), observing that:

- petitioner invoked his right to silence under the Fifth Amendment after having been given his Miranda[2] rights by two Oklahoma police officers, Hinds and Bufford, when taken into custody in Langston, Oklahoma; see Declarations, filed on 5/5/06, of Officer David Hinds at ¶¶ 9-10, & of former Police Chief Greg Bufford, ¶ 5.
- petitioner informed Investigator Cerrito prior to his (petitioner's) superior court trial that he had invoked his right to silence to the Oklahoma police; see petitioner's Dec., ¶¶ 4, 8, filed on 5/5/06; Declaration of Roseann Cerrito, ¶ 5, filed on 5/5/06.
- Cerrito informed petitioner's trial counsel at least three times that the

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

3

1         petitioner had invoked his right to silence to the Oklahoma police; Cerrito

2         Dec., ¶ 7.

3 •    petitioner also independently told his trial counsel on at least three

4         occasions that he had invoked his right to silence to the Oklahoma police;

5         petitioner's Dec., § 7.

6 •    petitioner's trial counsel never contacted the Oklahoma police or

7         otherwise investigated the claim; Declaration of Howard McEwan, filed

8         on 5/5/06, ¶5; Cerrito Dec., ¶ 8.

9 •    his trial counsel told Investigator Cerrito that it did not matter that

10        petitioner had invoked his right to silence to the Oklahoma officers

11        because it was the Sacramento officers who took petitioner's statement

12        which was introduced at trial; Cerrito Dec., ¶ 8.

13 •    trial counsel did not object to the introduction of petitioner's statement on

14        the ground that the Sacramento police did not "scrupulously honor"

15        petitioner's invocation of his right to silence within the meaning of

16        <u>Michigan v. Mosley</u>, 423 U.S. 96, 104-06, 96 S. Ct. 321, 326-27 (1975).

17 Motion, pp. 3-4, noting respondent's Answer, wherein respondent does not dispute the preceding

18 facts established by petitioner's supporting documents (Answer, pp. 20-21).   Petitioner seeks an

19 evidentiary hearing to establish the veracity of trial counsel's concession in a declaration that he

20 did not have a tactical reason for not investigating petitioner's allegations that he (petitioner) had

21 invoked his right to silence after Oklahoma police officers had read him his <u>Miranda</u> rights.

22 Motion, pp. 4, 6; Declaration of Howard McEwan, filed on 5/5/06, ¶5.  Petitioner evidently

23 believes this needs to be established because in the Answer (and in the filed Opposition to the

24 motion), respondent argued, inter alia, that trial defense counsel did have a tactical reason for not

25 investigating whether petitioner had invoked his right to silence with the police officers from

26 Oklahoma "presumably because [petitioner's] invocation of his right to silence did not preclude

4

1  the subsequent re-initiation of questioning four to five days later in a different locale with
2  different officers from a different jurisdiction who gave a fresh set of Miranda warnings."
3  Motion, p. 4, quoting Answer, p. 29;[3] Opp., p.4.  The court notes that respondent also contends
4  that the lack of recall with respect to his having been informed that petitioner had invoked his
5  right to silence, evidenced in trial counsel McEwan's declaration, renders his claim that he
6  lacked a tactical reason for failing to contact the officers from Oklahoma "suspect." [4] Answer, p.
7  29.

8           At oral argument, the undersigned indicated that there was no need for an
9  evidentiary hearing to verify the facts of this claim because the issues are legal.  The declarations
10 adequately establish that petitioner invoked with the Oklahoma police his right to remain silent
11 on November 15, 1999, which no party contends that the Oklahoma police did not honor.
12 Petitioner contends that under Michigan v. Mosley, 423 U.S. at 104-06, 96 S. Ct. 326-27, the
13 Sacramento police officers did not scrupulously honor petitioner's invocation of his right to
14 remain silent, when, days later, on November 20, 1999,[5] they arrived and took a statement from
15 petitioner about the same crime for which petitioner had chosen not to give a statement to the
16 Oklahoma police.  In Mosley, at 105-106, 96 S. Ct. at 327, the Supreme Court found that
17 petitioner's right to cut off questioning had been honored where police "immediately ceased the
18 interrogation, resumed questioning only after the passage of a significant period of time and the
19 provision of a fresh set of warnings, and restricted the second interrogation to a crime that had

---

[3] The court uses the electronic pagination in the CM-ECF system at the top of each electronically filed page, not the page numbering inserted by a party or counsel.

[4] "I have no current recollection of being informed by Mr. Sessoms or Ms. Cerrito that Mr. Sessoms invoked his Miranda rights to the officers who took Mr. Sessoms into custody in Oklahoma.  I know that I did not call anyone in Oklahoma to inquire about Mr. Sessoms' claim but I did not have a tactical reason for not doing so."  McEwan Dec., ¶ 5.

[5] The record of this case contains a videotape of the interview by Sacramento Officers Woods and Keller, dated November 20, 1999.  The record also otherwise indicates that that is the date of the interview/interrogation. See, e.g., Reporter's Transcript (RT), pp. 17-18.

1  not been a subject of the earlier interrogation."

2  However, as the court pointed out at the hearing on this motion, under U.S. v.

3  Hsu, 852 F.2d 407 (9th Cir. 1988), the Ninth Circuit has found that an interrogation that resumed

4  within thirty minutes after a suspect had invoked his right to silence as to a particular crime did

5  not violate the petitioner's Fifth Amendment rights, even though it involved the same crime.  The

6  court noted that:

> Our reading of Mosley is not so wooden.  Far from laying down
> inflexible constraints on police questioning and individual choice,
> Mosley envisioned an inquiry into all of the relevant facts to
> determine whether the suspect's rights have been respected.
> Among the factors to which the Court looked in that case were the
> amount of time that elapsed between interrogations, the provision
> of fresh warnings, the scope of the second interrogation, and the
> zealousness of officers in pursuing questioning after the suspect
> has asserted the right to silence. [Citation omitted.]
>
> ................................................................................
>
> Our post-Mosley decisions have adhered to this flexible approach that takes
> account of all relevant circumstances.  For example, we have noted
> on several occasions that an identity of subject matter in the first
> and second interrogations is not sufficient, in and of itself, to
> render the second interrogations unconstitutional.  Grooms v.
> Keeney, 826 F2d 883, 886 (9th Cir. 1987); United States v. Heldt,
> 745 F.2d 1275, 1278 n. 5 (9th Cir. 1984)(discussing United States
> v. Boyce, 594 F.2d 1246, 1278 (9th Cir. 1979).

U.S. v. Hsu, 852 F.2d at 410.

What weighs most heavily is the question of whether a fresh set of Miranda warnings are given and a valid waiver is obtained.  Id., at 411-12.  The substantive question as to the Mosley claim, claim one, is whether or not the Sacramento police properly re-Mirandized petitioner (and obtained a waiver) before talking with him some five days later, on November 20, 1999, which includes an inquiry into the manner of the re-issuance to petitioner of the Miranda warnings by Sacramento Police Officers Keller and/or Woods before they talked to him several days after he had cut off questioning from the Oklahoma police about the same crime.   As to claim two, the issue is whether or not the petitioner made an adequate request for counsel which

6

Sacramento police failed to honor. While whether or not the interrogation by the Sacramento police involved a waiver of Miranda rights as a result of overbearing or coercive tactics would apply to both the right to silence and the right to counsel, the stricture upon the police is much more onerous in the right-to-counsel context. It is the suspect (or interviewee) alone who must re-initiate any interrogation once his right to counsel has been invoked because once the subject of a custodial interrogation has asserted the right to counsel, "'the interrogation must cease until an attorney is present.'" Edwards v. Arizona, 451 U.S. 477, 485, 101 S. Ct. 1880, 1885 (1981), quoting Miranda v. Arizona, 384 U.S. at 474, 86 S. Ct. at 1627. Edwards noted that Mosley distinguished the "procedural safeguards triggered" by invoking the right to silence from a request for counsel, only the latter of which required that all interrogation cease until an attorney was present. Id.

In oral argument, counsel for petitioner conceded that the claim at issue in the motion for an evidentiary hearing is not one arising as a straight claim under Edwards, but that Mosley and its progeny must be applied to determine if any violation occurred at all. Counsel then went on to argue that, if however, a violation did occur under Mosley, only then does the question arise as to whether there was a reasonable tactical decision in trial counsel's failure to pursue and investigate the claim, etc., for which petitioner's counsel has submitted a declaration by trial counsel that he had no tactical reason for not doing so. Because respondent has raised some question as to trial counsel's sincerity, or at least as to his recall, on this point, petitioner believes the evidentiary hearing is necessary.

*Standards for Ineffective Assistance of Counsel*

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S. Ct. at 2065. To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable

professional judgment. Id. at 690, 104 S. Ct. at 2066. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id., 104 S. Ct. at 2066. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard. Williams v. Taylor, 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S.Ct. 2052. Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

> For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. See Williams, supra, at 411, 65 S. Ct. 363. Rather, he must show that the [ ]Court of Appeals applied Strickland to the

8

1   facts of his case in an objectively unreasonable manner.
2   Bell v. Cone, 535 U.S. 685, 698-699, 122 S. Ct. 1843,1852 (2002).
3   As this court pointed out at the hearing, there is no need for an evidentiary hearing
4   because, applying the Strickland prejudice prong, this court must find that "confidence in the
5   verdict is completely undermined" by trial counsel's failure to proceed down the path of the
6   Mosley claim.  After finding prejudice following that analysis, this court must then process the
7   claim through the AEDPA[6] filter, requiring the undersigned to find the state court decision
8   denying petitioner's IAC claim re: Mosley objectively unreasonable, having made a ruling that is
9   worse than clear error.  As the court observed at the hearing, should the claim survive these
10  levels of analysis, there can be no finding on the first Strickland prong that trial counsel made a
11  reasonable tactical decision in failing to investigate the claim.  That is, trial counsel cannot have
12  had a reasonable basis for ignoring a suppression basis that was clear from the record and so
13  "winable" for petitioner.   On the other hand, if there is no Mosley violation, counsel's state of
14  mind is equally irrelevant – no harm, no foul.  In any event, notwithstanding respondent's
15  questions as to the sincerity or effectiveness of trial counsel's declaration that he had no tactical
16  basis or reason for not following through with the investigation of this claim, given his own

---

[6] "Unreasonable application" of established law applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue.  Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions.  While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).  The state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002).  An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).

representation of the vagaries of his memory regarding this issue, it is unlikely an evidentiary hearing would uncover any facts not adequately set forth in the supporting declarations to the amended petition. Indeed, once petitioner has expanded the record with the declaration of trial counsel, it is *respondent* who requires the evidentiary hearing if respondent desires to dispute those facts initially outside the record. Otherwise, the declaration stands as uncontroverted. Respondent has not requested, and has opposed, the evidentiary hearing. Trial counsel's facts outside the record as set forth in the declaration are the facts of this case.

        Accordingly, IT IS ORDERED that petitioner's August 24, 2006, motion for an evidentiary hearing is denied.

DATED: 12/15/06                      /s/ Gregory G. Hollows

                                        GREGORY G. HOLLOWS
                                        UNITED STATES MAGISTRATE JUDGE

GGH:009
sess1221.evi